**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC; DAVID B. NEEDHAM; ERIC D. DOSTIE; and JEREMIAH J. WESBROCK, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiffs,* | Civil No. _____ |
| *v.* | |
| AARON M. FREY, in his official capacity as Attorney General of Maine, | |
| *Defendant.* | |

**INJUNCTIVE RELIEF SOUGHT**

Plaintiffs, by and through their attorneys, bring this Complaint against Aaron M. Frey, in his official capacity as Attorney General of Maine, and state the following in support thereof:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action to vindicate their First Amendment rights to speak, associate, and petition the government with respect to the provision of disability benefits owed to veterans for honorable service to the country.

2.     On April 11, 2024, Governor Janet Mills signed into law Maine Legislative Document 2259 ("L.D. 2259"), 37-B MRSA § 12 (131st Legis. 2024).  The law makes it a violation of Maine's Unfair Trade Practices Act for any individual or entity to receive compensation for advising or assisting veterans with their initial claims before the U.S. Veterans Administration ("VA").

3.     Plaintiff Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian" or the "Company") provides consultant services to veterans in all fifty states, including Maine, by advising and assisting veterans who plan to petition the VA for disability benefits.  Because Veterans Guardian is unaccredited by the VA, receives compensation for its services, and primarily focuses on initial claims, it can no longer advise Maine veterans who want to submit claims to the VA.

4.     Plaintiffs Petty Officer First Class, STS1 (SS) David B. Needham ("SS Needham"), Sergeant Eric D. Dostie ("Sgt. Dostie"), and Staff Sergeant Jeremiah J. Wesbrock ("SSG Wesbrock") (together, the "Veteran Plaintiffs") are veterans who reside in Maine.  The Veteran Plaintiffs wish to continue to retain and use the services of Veterans Guardian to advise them as they prepare to submit claims to the VA for increased disability ratings and benefits.  The Veteran Plaintiffs cannot do so because Veterans Guardian is no longer permitted to conduct business in Maine.

5.      Veterans Guardian and the Veteran Plaintiffs bring this action to challenge L.D. 2259 under the First Amendment of the United States Constitution.  L.D. 2259 violates the Plaintiffs' First Amendment rights by unlawfully restricting their speech based on content.  Specifically, L.D. 2259 targets speech in the form of advice and assistance (to include instruction, education, guidance, etc.) when it concerns a "veterans' benefits matter," as broadly defined in the statute.  L.D. 2259 also violates the Veteran Plaintiffs' First Amendment rights to discuss their claims with Veterans Guardian, to petition the government for redress of grievances, and to associate for that purpose.

6.      L.D. 2259 is not narrowly tailored to further a compelling government interest.  Contrary to Supreme Court precedent, Maine has "lump[ed]" responsible industry participants like Veterans Guardian together with companies that might not be so scrupulous and broadly prohibited all unaccredited entities from accepting compensation for assisting veterans with their claims.  *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980).  Even if Maine adequately articulated or justified its interest in protecting veterans in connection with L.D. 2259, it must act through regulations "narrowly tailored to achieve that interest."  *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 13 (1st Cir. 2012) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)).  L.D. 2259's indiscriminate prohibitions fall far short of that rigorous standard.

7.      L.D. 2259 is facially unconstitutional as "no set of circumstances exists under which [the law] would be valid" and because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (citations omitted), *superseded by statute on other grounds*, Pub. L. No. 111–294, § 3(a), 124 Stat. 3178 (2010).

8.     But even if the law's prohibitions could constitutionally be applied to some individuals and entities—like those actually engaged in bad behavior—it is unconstitutional as applied to Veterans Guardian given the Company's scrupulous and transparent practices.

9.     This Court should accordingly issue a declaratory judgment holding L.D. 2259 unconstitutional and an injunction preventing enforcement of the law, along with any other necessary relief.

## THE PARTIES

### A.    Plaintiffs

10.    Plaintiff Veterans Guardian assists veterans in applying for the VA disability rating for which they qualify as a result of their honorable service to the nation.  Veterans Guardian is a North Carolina Limited Liability Company with a principal place of business in Pinehurst, North Carolina, and provides services to veterans in all fifty states, including Maine.

11.    Plaintiff SS David B. Needham served for seventeen years in the United States Navy primarily as a submarine special purpose acoustic equipment technician.  He lives in Harpswell, Maine.  SS Needham is a client of Veterans Guardian who, because of L.D. 2259, is unable to utilize Veterans Guardian's full services.

12.    Plaintiff Sgt. Eric D. Dostie served for eight years in the United States Marine Corps as a mechanic and recruiter.  He lives in Shawmut, Maine.  Sgt. Dostie is a client of Veterans Guardian who, because of L.D. 2259, is unable to utilize Veterans Guardian's full services.

13.    Plaintiff SSG Wesbrock served for eleven years in the United States Army in the military police.  He lives in Rockport, Maine.  SSG Wesbrock is a client of Veterans Guardian who, because of L.D. 2259, is unable to utilize Veterans Guardian's full services.

### B.    Defendant

14.     Defendant Aaron M. Frey is the Attorney General of Maine.  He is the State's chief law enforcement officer and is authorized to investigate alleged violations of Maine's Unfair Trade Practices Act and to assess penalties when violations are shown.  *See* 5 MRSA §§ 209–212.  In light of these duties, Attorney General Frey has responsibility for enforcing L.D. 2259.  The Attorney General is headquartered at 6 State House Station, Augusta, ME 04333.  Defendant Frey is acting under color of State law for purposes of 42 U.S.C. § 1983 and is sued in his official capacity.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the case arises under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

16.     This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, including the passage and signing of L.D. 2259. Given the Attorney General's base of operations in Augusta, any enforcement would arise from Kennebec County as well.

## BACKGROUND

**A.     Statutory Background**

*1.     Federal law and regulations*

18.     Congress and the VA have enacted rules and standards applicable to agents and attorneys who represent veterans in connection with disability and other claims before the VA.

19.     Section 5901 of title 38 provides that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such purposes by the Secretary."  38

U.S.C. § 5901(a).   Section 5904 authorizes the Secretary of Veterans Affairs to recognize individuals for the purpose of acting as agents and attorneys and to set standards for the qualification of such individuals.  *Id*. § 5904(a).  The same section holds that agents and attorneys may not charge fees for services provided before the date on which the agency issues an initial decision on a claim.  *Id*. § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a claimant is provided notice of the agency of original jurisdiction's initial decision.").

20.   The Secretary has exercised the authority provided by section 5904(a) to issue regulations on the recognition of individuals to act as agents and attorneys for veterans.  Those regulations provide that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."  38 C.F.R. § 14.629(b)(1).  The regulations set forth requirements for accreditation by agents and attorneys, as well as requirements for training, continuing education, and reporting.  *Id.*  They also implement the statute's prohibition on agents and attorneys charging fees for services prior to a notice of initial decision, *id.* § 14.636(c), and set standards and limits on the amount that can be charged for those services, *id.* § 14.636(e).

21.   Chapter 59 does not define the terms "agent" or "attorney."  For purposes of the regulations, "[a]gent" is defined as "a person who has met the standards and qualifications outlined in § 14.629(b)[,]" and "[a]ttorney" is defined as "a member in good standing of a State bar who has met the standards and qualifications in § 14.629(b)."  38 C.F.R. § 14.627(c)–(d).

22.   Federal law *today* includes no prohibition on unaccredited individuals or entities advising or assisting veterans, provided that they do not do so as an "agent or attorney."  Likewise, federal law does not broadly prohibit unaccredited individuals or entities from charging fees.

23.     That was not always the case.  In a prior iteration, 38 U.S.C. § 5905 imposed penalties on anyone who "solicit[ed], contract[ed] for, charge[d], or receive[d] . . . [a] fee or compensation except as provided in section[] 5904 . . . ."  38 U.S.C. § 5905 (1991).  Like current law, the contemporaneously applicable version of section 5904 authorized agents and attorneys to charge fees after a certain stage in the proceedings, but not before.  *See id.* § 5904(c)(1) (1998).  Read together, those provisions allowed accredited agents and attorneys to collect fees for certain services, and barred everyone else from charging for claims assistance, regardless of the type of service provided and the stage at which it was performed.

24.     That is no longer the law.  In 2006, Congress repealed the part of section 5905 that barred compensation for claims assistance outside of section 5904.  *See* Pub. L. 109-461, § 101(g), 120 Stat. 3408 (2006).  Post-amendment, federal law includes no broad prohibition on unaccredited individuals and entities charging fees—it only bars them from acting "as an agent or attorney . . . ."  38 U.S.C. § 5901(a).

> 2.     *Maine L.D. 2259*

25.     L.D. 2259 imposes restrictions beyond those established by federal law.

26.     In section 2.A, L.D. 2259 provides that "[a] person may not . . . [r]eceive compensation for preparation, presentation or prosecution of; *or advising, consulting or assisting* an individual with, a veterans' benefits matter, except as permitted under federal law."  37-B MRSA § 12.2.A (emphasis added).  And section 2.C blocks all persons from "[r]eceiv[ing], with respect to an individual's veterans' benefits matter, compensation for services rendered before the date on which a notice of disagreement, decision review or appeal is filed, whichever occurs first."  *Id.* § 12.2.C.

27.     "Veterans' benefits matter" is defined to include "the preparation, presentation or prosecution of a claim affecting an individual who has filed or expressed an intent to file a claim for a benefit, program, service, commodity, function or status, entitlement to which is determined under the laws and regulations administered by the United States Department of Veterans Affairs or the United States Department of Defense pertaining to veterans, their dependents, their survivors and any other individual eligible for such benefits."  *Id.* § 12.1.C.

28.     L.D. 2259 includes other prohibitions, including "guarantee[ing] either directly or by implication, that any individual is certain to receive specific veterans' benefits or that any individual is certain to receive a specific level, percentage or amount of veterans' benefits[,]" *id.* § 12.2.D; agreeing to accept compensation without a written agreement, *id.* § 12.3; charging "excessive or unreasonable fees[,]" *id.* § 12.2.E; and receiving compensation for referrals, *id.* § 12.2.B.

29.     L.D. 2259 provides that violation of its provisions "constitutes a violation of the Maine Unfair Trade Practices Act[,]" 5 MRSA § 205-A *et. seq.*, which can result in monetary fines and other penalties.  *See id.* § 209 (authorizing courts to "issue temporary or permanent injunctions to restrain and prevent violations of [the Act]"); *id.* (establishing "a civil penalty of not more than $10,000" for an intentional violation of the Act).  The Attorney General is responsible for enforcing the Unfair Trade Practices Act, *see id.*, which also includes a private right of action, *id.* § 213.

## B.     Factual Background

### 1.     *Veterans Guardian's Services*

30.    Veterans Guardian was founded in 2017 by U.S. Army veterans William Taylor and Scott Greenblatt.  It is staffed primarily by veterans, their family members, and spouses of active-duty military members.

31.    Veterans Guardian operates with the mission of helping veterans achieve the disability rating for which they qualify as a result of their honorable service to the nation.  Veterans Guardian fulfills that mission by advising and assisting veterans with VA disability benefits claim submissions.

32.    Navigating the VA disability claims process can be difficult and confusing. Without in-depth knowledge of how the claims process works and experience maneuvering through it, it can be difficult for veterans to pursue their claims successfully.  Though there are veterans service organizations ("VSOs"), like the Veterans of Foreign Wars ("VFW") and the American Legion, as well as some state agencies, that offer veterans free assistance with disability claims, those organizations' limited capacities and resources often preclude them from meeting the needs of all veterans eligible for benefits.  It is estimated that there is currently a backlog of hundreds of thousands of claims by veterans seeking disability assistance.

33.    Approximately 70% of Veterans Guardian clients were unsuccessful in obtaining or increasing their disability benefits when they used a free claims-assistance service.

34.    Since its inception, Veterans Guardian has helped over 30,000 veterans increase their disability benefits, with an average benefits increase of $1,000 per month.  90% of Veterans Guardian clients achieve an increase in benefits within 85 days.

35.    Veterans Guardian has helped over 250 Maine veterans vindicate their rights before the VA.

36.     Veterans Guardian's record of success is due to the skill, expertise, and passion the Company brings to its work.  Veterans Guardian's disability claims specialists receive extensive training on the VA disability claims process.  Individual specialists assist clients in developing claims by, among other things, reviewing relevant documents, helping develop supporting materials, identifying claim strategies, and advising on how to prepare and submit a claim.  Following decision on a client's claim, the specialists review the decision and identify post-decision strategies as applicable, including advising the veteran on how to submit a new claim for benefits.

37.     In short, Veterans Guardian serves as an advisor and consultant to veterans as they navigate the claims process.  Veterans Guardian does not file claims on its clients' behalf, does not represent clients in the claims process, and does not purport to be accredited by the VA. Accordingly, Veterans Guardian does not serve as an "agent or attorney" under federal law.

38.     Many veterans choose to work with Veterans Guardian because the federal system is inefficient and perversely incentivized.  Under that system, accredited agents and attorneys may accept compensation only for services rendered *after* the VA issues an initial decision in a veteran's case.  In other words, a veteran cannot pay an accredited agent or attorney to help with a claim unless she first receives an unfavorable decision.  When and if the veteran achieves a positive result on appeal—typically years later—the agent or attorney is entitled to a percentage of the backpay owed to the veteran beginning on the date the initial claim was filed.  The longer an appeal takes, the more backpay the veteran will be owed, and the more the agent or attorney will earn that will be paid out of that backpay.  Hence, accredited agents and attorneys have a pecuniary interest in an extended appeals process.

39.     Veterans Guardian focuses on getting claims right the first time, so no appeal is needed.  Although that works tremendously well for veterans, the Company's focus on initial claims (rather than appeals) means that Veterans Guardian could not charge a fee for its services if it were to become an accredited agent.

40.     But it does not mean that Veterans Guardian is violating federal law by receiving compensation for helping veterans with their initial claims.   As explained above, federal restrictions apply only to those who act as a veteran's "agent or attorney," which Veterans Guardian does not do.  38 U.S.C. §§ 5901(a), 5904(c)(1); *see also* 38 C.F.R. §§ 14.629(b)(1), 14.636(a), 14.636(c).

41.     Veterans Guardian is transparent about all aspects of its services.

42.     Veterans Guardian enters into a Consulting Service Agreement with each of its clients.  *See* Ex. A, Veterans Guardian LLC Consulting Services Agreement ("VG Consulting Agreement").  That agreement makes clear that Veterans Guardian is not a VA-accredited agent and is not the client's representative before the VA.  *Id.* ¶¶ I(E), II(B)(5).  The agreement likewise makes clear that Veterans Guardian is not a law firm, has no attorney on staff, and is not licensed to practice law in any jurisdiction.  *Id.* ¶ II(C)(6).  Additionally, on the first page, Veterans Guardian discloses that free services are available to support veterans submitting claims for VA disability benefits, that clients can achieve a positive outcome with those free services, and that clients can use Veterans Guardian's services in coordination with free services or other paid services.  *Id.* ¶ I(D).

43.     Additionally, Veterans Guardian requires every new client to sign a separate one-page document to acknowledge the availability of free services and the option to navigate the claims process on one's own.  *See* Ex. B, Veterans Guardian Proclamation.  The document further

states that either of these options can be successful, that Veterans Guardian is not an accredited agent or attorney, and that the Company only charges a fee if its client obtains an increase in disability benefits. *Id.* at 1.

44.    Veterans Guardian's compensation for its consulting services is also fully disclosed.  In the Consulting Service Agreement, Veterans Guardian explains that, if the client is awarded an increase in disability pay, the fee is the difference between the monthly amount of benefits received pre-claim and the amount the veteran will receive post-claim, multiplied by five. *See* Ex. A, VG Consulting Agreement ¶¶ II(A)(6), IV(A)-(B).  Successful clients will receive increased benefits every month for the rest of their lives—Veterans Guardian's fee is equivalent to just five of those monthly increases. *Id.* ¶ IV(B)-(C).  The client may elect to pay the fee in one lump sum at a 10% discount or on a five- or ten-month schedule, or may elect a custom payment option with no interest or additional fees. *Id.* ¶ V(D).

45.    If the veteran does not achieve higher benefits (even if there is an increase in disability *rating*), Veterans Guardian does not accept any fee from the veteran.

### 2.    *Veteran Plaintiffs*

#### (1)    *Petty Officer First Class David B. Needham*

46.    Petty Officer First Class, STS1 (SS) Needham served in the Navy for seventeen years, from 1977 to 1994.  He holds a Masters Degree in Social Work and presently serves as a correctional facility counselor.

47.    SS Needham served as a submarine special purpose acoustic equipment technician on several sea-based command deployments based out of Groton, Connecticut and Scotland. When he was not deployed on a sea-going command, SS Needham was stationed as a military police officer in Groton, Connecticut and a military correctional officer in Newport, Rhode Island. He also served as a substance abuse counselor in Brunswick, Maine before retiring from the Navy.

48.     While in the Navy, SS Needham received extensive training in the operation, maintenance, and repair of sonar equipment and support systems on submarines.

49.     SS Needham received several service-related honors, including four Naval Good Conduct Medals, a Navy Achievement Medal, and several sea service deployment ribbons.

50.     As a result of his service, SS Needham suffers from post-traumatic stress disorder ("PTSD") and other conditions, including limited use of his wrist and shoulder stemming from repetitive use of his wrist working with equipment on submarines.

51.     He has a 50% disability rating for his wrist and shoulder, but he does not receive disability compensation connected to his PTSD.

52.     SS Needham's coworker recommended that he contact Veterans Guardian for help in seeking disability compensation for his PTSD because Veterans Guardian helped the coworker and his family obtain increased disability ratings.

53.     SS Needham contacted Veterans Guardian in April 2024.

54.     Veterans Guardian has helped SS Needham develop his claim for an increased disability rating based on PTSD by explaining and guiding him through the application process.

55.     To complete his application, SS Needham needs a document from the VA relating to his current disability rating, but has been unable to obtain it. The VA has not been responsive to his multiple requests for help, and the experience has left him deeply frustrated with the agency.

56.     By contrast, SS Needham is very pleased with the level of care and assistance that he has received from Veterans Guardian, and he has recommended Veterans Guardian to other veterans.

57.     SS Needham understands that Veterans Guardian charges a fee if a claim is successful in increasing the veteran's disability compensation.  He believes the fee of five times the amount of monthly increase is fair.

58.     Before SS Needham could submit his application for a disability rating increase, Veterans Guardian informed him that because of L.D. 2259, the Company would not be able to continue assisting him.

(2)     *Sergeant Eric D. Dostie*

59.     Sgt. Dostie served in the Marine Corps for eight years, between 2004 to 2012.  He currently works as a crane operator.

60.     Sgt. Dostie initially served as a diesel mechanic in the motor transport field.  Based in Okinawa, Japan, he was responsible for ensuring that vehicles used in the field were inspected, maintained, and functional.

61.     For nine months, Sgt. Dostie was deployed to Iraq.  There, he worked on the flight line and participated in convoys to establish forward operating bases.  Near the end of his military contract, he attended Recruiting School and served as a recruiter for the Marine Corps.

62.     Sgt. Dostie received several service-related honors, including three Marine Corps Good Conduct Medals, two Iraq Campaign Medals, the National Defense Service Medal, an Individual Certificate of Commendation, and three Expert Marksman Rifle Badges.

63.     As a result of his service, Sgt. Dostie suffers from several physical disabilities, including leg pain, ankle pain, side effects stemming from a cavernous sinus thrombosis episode that occurred while he was stationed in Okinawa, and a lingering wrist injury related to his service in Iraq.  He has a VA disability rating of 10% for his wrist injury.

64.     Sgt. Dostie also suffers from PTSD.

65.     When he was discharged from the Marines, Sgt. Dostie applied for disability benefits with the VFW's assistance.  Sgt. Dostie was displeased with the quality of service he received.  The VFW did not ask for any of his medical documentation and lumped all of his physical conditions into one claim, leading the VA to issue a lower disability rating than it might have if he had submitted separate claims for each of his several physical conditions.

66.     Sgt. Dostie is not comfortable working directly with the VA to submit benefits claims because of the way the VA has treated him when he has sought medical care at VA facilities.

67.     Based on his experiences, he does not believe that seeking assistance from the VA alone or through VSOs will be fruitful.

68.     Sgt. Dostie first learned of Veterans Guardian from a fellow former Marine with whom he served in Iraq.  The former Marine recommended Veterans Guardian to Sgt. Dostie.

69.     Sgt. Dostie contacted Veterans Guardian in March 2024.

70.     Veterans Guardian helped Sgt. Dostie develop a claim for an increased disability rating based on PTSD.  The Company's representatives explained the application process and guided him through the steps.  After the VA requested additional information from Sgt. Dostie in connection with his application, Veterans Guardian helped assemble the information so that he could submit it to the VA.  Sgt. Dostie is currently waiting on a final determination by the VA for his PTSD-related disability rating.

71.     Sgt. Dostie would like to use Veterans Guardian's services for additional benefits claims related to his sinus and wrist conditions.

72.     He is very pleased with the level of care and help he received from Veterans Guardian, and has recommended Veterans Guardian to other veterans.

73.   Sgt. Dostie understands that Veterans Guardian charges a fee if a claim is successful in increasing the veteran's disability compensation.  He believes the fee of five times the amount of monthly increase is fair.

74.   While Sgt. Dostie's PTSD benefits claim was pending with the VA, Veterans Guardian informed him that, because of L.D. 2259, the Company would not be able to assist him with claims related to his sinus and wrist conditions.

(3)   *Staff Sergeant Jeremiah J. Wesbrock*

75.   SSG Wesbrock served in the Army for eleven years, from 1995 to 2006.  He currently works as a Maine State Trooper.

76.   SSG Wesbrock served in the military police and deployed to Korea, Bosnia, Uzbekistan, Afghanistan, and Brussels.  As part of his duties, SSG Wesbrock often provided personal security and protection to high-ranking military officers and political appointees.  In Afghanistan, he served as an investigator, enforcing military laws and supporting intelligence operations on bases.

77.   SSG Wesbrock received several service-related honors, including five Army Commendation Medals, two Joint Service Commendation Medals, three Army Good Conduct Medals, the Global War on Terrorism Service Medal, and the Armed Forces Expeditionary Medal.

78.   As a result of his service, SSG Westbrock suffers from PTSD and other conditions, including headaches, traumatic brain injury, radiculopathy, right knee pain, tinnitus, and spinal pain.

79.   SSG Wesbrock has a 60% disability rating based only on his physical disabilities and no disability rating for PTSD.

80.     A friend recommended Veterans Guardian to SSG Wesbrock based on the friend's experience working with the Company to obtain an increase in his PTSD-connected disability benefits.

81.     SSG Wesbrock contacted Veterans Guardian in February 2024.

82.     Veterans Guardian explained the application process and guided SSG Wesbrock through the steps.

83.     In approximately June 2024, the VA awarded SSG Wesbrock an additional 30% rating in connection with his service-connected PTSD.

84.     SSG Wesbrock is very satisfied with the care and professionalism Veterans Guardian provided to him, and has recommended Veterans Guardian to other veterans.

85.     SSG Wesbrock knows about the fee that the Company charges if a claim is successful in increasing the veteran's disability compensation.  He believes that the fee of five times the amount of monthly increase is fair.

86.     SSG Wesbrock intended to use Veterans Guardian's services to further increase his disability benefits rating based on the physical symptoms accompanying his PTSD.

87.     Before SSG Wesbrock could engage with Veterans Guardian about a second disability benefit claim, however, Veterans Guardian informed him that because of L.D. 2259, the Company would not be able to assist him further.

   *3.     Enactment and Impact of L.D. 2259*

88.     L.D. 2259 was introduced on March 7, 2024, and considered in the Joint Standing Committee on Veterans and Legal Affairs on March 12, 2024.

89.     At the public hearing, the Joint Committee heard testimony from presenting Senator Brad Farrin, who referenced the need to "protect [veterans] from . . . predatory practices . . . ." *An*

*Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law*: *Hearing on L.D. 2259 Before the Joint Comm. on Veterans & Legal Affs.*, 131st Legis., 2d Sess. (Me. 2024) ("Hearing on L.D. 2259") (testimony of Sen. Brad Farrin, at 2:25:00-2:25:28).[1]   Senator Farrin referenced "claim sharks[,]" which he described as "individuals or groups that are highly coordinated and skilled at the immoral operation they run." *Id.*   "They are cunning, convincing and manipulative," he opined, "often offering consultation from their own network of doctors while promising an expedited examination and guarantee an increased disability rating or percentage increase to their benefits." *Id.*; *see also* Sen. Brad Farrin, *Testimony in Support of L.D. 2259, An Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law,"* 131st Leg., 2d Sess. (Me. 2024).[2]

90.     Two other witnesses offered similar testimony.  David Richmond, Director of the Maine Bureau of Veterans' Services, described "a growing trend involving misleading advertisements . . . [that] promise outcomes" and result in "predatory agreement[s] with . . . non-accredited agenc[ies] . . . that eventually garnish[] a large portion of the veteran's payment." Hearing on L.D. 2259 (testimony of David Richmond, Dir., Me. Bureau of Veterans' Servs, at 2:34:01-2:34:49); *see also* David Richmond, Me. Bureau of Veterans' Servs., *Testimony in Support of L.D. 2259, "An Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law,"* 131st Leg., 2d Sess. (Me. 2024).[3]  A representative of the VFW complained that so-called "claim sharks" "make promises to increase veterans' disability ratings," "request VA login credentials to track when veterans

---

[1] *Available at* https://legislature.maine.gov/audio/#437?event=91163&startDate=2024-03-12T13:00:00-04:00.

[2] *Available at* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=182492.

[3] *Available at* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=182491.

receive future ratings increases," "return seeking more money" if a veteran obtains a benefits increase years later, and "routinely obtain medical opinions from affiliated medical providers . . . ." Hearing on L.D. 2259 (testimony of Steven J. SanPedro, Veterans of Foreign Wars, at 2:39:00-2:39:22); Steven J. SanPedro, Veterans of Foreign Wars, *An Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law*, 131st Leg., 2d Sess., at 1 (Me. 2024).[4]

91.     None of the witnesses who testified in support of L.D. 2259 offered any evidence of alleged fraud by unaccredited entities.

92.     Lieutenant Colonel Mark Christensen of Veterans Guardian, Ray Colas of Veteran Benefits Guide, and Peter O'Rourke, former Acting Secretary of the Department of Veterans Affairs and President of the National Association for Veterans Rights ("NAVR"), testified in opposition to the bill.

93.     Mr. Christensen explained that L.D. 2259 "makes what [Veterans Guardian] do[es] illegal," and would accordingly drive the Company out of business and "den[y] the Veteran the use of private claims experts."  Hearing on L.D. 2259 (testimony of Mark Christensen, Chief of Staff, Veterans Guardian Claim Consulting, LLC, at 2:44:36-2:45:11).  Taking on Senator Farrin's words, Mr. Christensen testified that Veterans Guardian "is not immoral, unethical, or illegal," but rather endeavors to act in the best interest of veterans at all times.  *Id.*  He observed that similar legislation was "voted down or killed in Florida, Kansas, Hawaii, Nebraska, South Dakota, Washington, West Virginia, and Wyoming." *Id.*; *see also* Mark Christensen, Chief of Staff,

---

[4] *Available at* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=10030592.

Veterans Guardian VA Claim Consulting, LLC, Opening Statement, 131st Leg., 2d Sess., at 5 (Me. 2024).[5]

94.     Although acknowledging that, like in all industries, there could be "bad actors" who take advantage of veterans, Mr. Christensen explained to the Committee that "the disability space is . . . different" and "the number" of veterans who are subjected to predatory practices "is relatively low" as compared to other veteran-focused industries.  Hearing on L.D. 2259, at 2:54:41-2:55:36.  He assured the Committee that it could impose guardrails to protect veterans without putting Veterans Guardian and other companies like it out of business.  *Id.*  "The solution," Mr. Christensen urged, "shouldn't be to wipe out the entire industry."  *Id.*

95.     Mr. O'Rourke also focused on the need to address problematic practices rather than to prohibit private companies from assisting veterans. He observed that, to the extent that the Committee was concerned about fraud—such as charging for work not performed—existing consumer-protection laws could address those practices without the need for new legislation. Hearing on L.D. 2259 (testimony of Peter O'Rourke, President, Nat'l Ass'n for Veterans Rights, at 3:05:00-3:05:40).   But the Committee could also establish certain rules and limitations to regulate private companies operating in the veterans'-benefits space.  *Id.*  In a written submission, NAVR illustrated for the Joint Committee the differences between the practices of good and bad actors, noting that good actors "[e]mploy[] a [s]uccess-[b]ased [f]ee [s]tructure," "[c]harge[] [r]easonable [f]ees[,]" "[i]nform[] [v]eterans of [f]ree [o]ptions[,]" and "[t]ransparently disclose[] non-accredited status to veterans[.]"  Nat'l Ass'n for Veterans Rights, *Good vs Bad Actors in the Veterans Claim Industry*, 131st Leg., 2d Sess., at 1 (Me. 2024).[6]  Bad actors, by contrast, might

---

[5] *Available at*
https://legislature.maine.gov/backend/app/services/getDocument.aspx?doctype=test&documentId=182494.

[6] *Available at* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=182493.

"[c]harg[e] . . . excessive fees[,]" "[m]isuse[] veterans' . . . [l]ogin [i]nformation[,]" and use predatory collection practices. *Id.*

96.     Mr. Colas similarly testified about the need to "separate the bad actors from the good actors." Hearing on L.D. 2259 (testimony of Ray Colas, Veteran Benefits Guide, at 3:11:44-3:12:24). He offered ways that the Committee could impose guardrails and safeguards on the industry, such as by establishing "mandates requiring written confirmation from the veteran that they have been informed that a free option is available to them, mandating that any fee is purely contingent upon an increase of benefits, [setting] fee caps [and] prohibitions on any initial or nonrefundable fees, prohibiting private companies from having doctors . . . on the payroll performing secondary medical exams, prohibiting the use of international . . . call centers . . . , and prohibiting advertising or guaranteeing a successful outcome." *Id.*; *see also Veterans Benefits Guide Opposition to Legislative Docket 2259*, 131st Leg., 2d Sess. (Me. 2024).[7]

97.     On March 14, 2024, the Committee met again to vote on the bill.

98.     Although he supported L.D. 2259, Representative Benjamin Hymes expressed reservations. As "a member of the veterans' community," Representative Hymes said that he "unders[ood] [with] the VSO, sometimes you get what you pay for." *Working Session, An Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law: Hearing on L.D. 2259 Before the Joint Comm. on Veterans & Legal Affs.*, 131st Legis., 2d Sess. (Me. 2024) ("Working Session on L.D. 2259") (statement of Rep. Benjamin Hymes, Member, Joint Comm. on Veterans & Legal Affs., at 1:42:20-1:43:54).[8] He agreed with Veterans Guardian and others that "it is extremely hard sometimes, especially after

---

[7] *Available at* https://legislature.maine.gov/legis/bills/getTestimonyDoc.asp?id=10030597.

[8] *Available at* https://legislature.maine.gov/audio/#437?event=91166&startDate=2024-03-14T13:00:00-04:00.

about your 12 month mark of being retired [from the military] to get . . . benefits, to get somebody on the phone, to get an email back, all of those [things.]"  *Id.*  In light of that "huge issue within the service community with getting benefits," Representative Hymes "would have preferred guardrails as opposed to an elimination of the [industry]."  *Id.*  He also recognized that "in any business where there's the possibility of making money, there's going to be a predator, hands down."  *Id.*  But Representative Hymes explained that he "would have preferred to see guard rails against predatory activity," rather than a bill like L.D. 2259, which prohibits unaccredited entities from assisting veterans in all respects.  *Id.*

99.    In his response to Representative Hymes, the Chairman of the Joint Committee, Senator Craig Hickman, indicated a misunderstanding about the breadth of the bill.  The Chairman opined that "the provisions of [f]ederal law will be the guardrails," as well as the sections providing that companies "cannot guarantee, either directly or by implication, that any individual is certain to receive specific benefits, or that any individual is certain to receive a specific level, percentage, or amount of veterans benefit."  Working Session on L.D. 2259 (statement of Sen. Craig Hickman, Chair, Joint Comm. on Veterans & Legal Affs., at 1:44:20-1:44:53).   The Chairman then incorrectly stated that the bill "doesn't prohibit the activity" and would not "put anyone necessarily out of business." *Id.*

100.    The Joint Committee favorably voted on the bill.

101.    L.D. 2259 passed the House of Representatives on April 3, 2024, and passed the Senate on April 9, 2024.

102.    Governor Mills signed L.D. 2259 into law on April 11, 2024 and it takes effect on August 9, 2024.

103.    Immediately upon the law's passage, Veterans Guardian stopped accepting new clients in Maine.  Beginning on August 9, 2024, Veterans Guardian will not accept any payment from Maine clients with claims presently in process if a claim is successful and will remit any payments made after that date.  For Maine clients the Company is already assisting, it will endeavor not to leave them in a disadvantageous position and thus may provide assistance with very minimal aspects of their claims without charging a fee.  However, Veterans Guardian will not be able to provide its full services to any clients in Maine.

104.    Contrary to Chairman Hickman's assertion, then, L.D. 2259 does "prohibit" Veterans Guardian's activity and "put[s] [Veterans Guardian] out of business" in Maine.  *See* Working Session on L.D. 2259, at 1:44:44-1:44:53.

105.    L.D. 2259 also severely limits the ability of Maine veterans, including SS Needham, Sgt. Dostie, and SSG Wesbrock, to choose how to pursue their claims for VA disability benefits.

106.    Specifically, as a result of L.D. 2259, SS Needham cannot continue using the full services of Veterans Guardian, which he believes is the best, and likely only, entity with the ability to advise him as he seeks to obtain a disability benefit rating related to his PTSD.  He wants to continue working with Veterans Guardian because the Company has effectively helped him with his claim up to this point.  L.D. 2259 makes that impossible.

107.    Additionally, as a result of L.D. 2259, Sgt. Dostie cannot use the services of Veterans Guardians to pursue claims in connection with his sinus and wrist conditions.  He does not think that the VSOs have the resources to assist him, and he does not want to file his claim with the VA on his own.  He would like to continue to work with Veterans Guardian because Veterans Guardian has been professional and responsive.  L.D. 2259 makes that impossible.

108.     As a result of L.D. 2259, SSG Wesbrock cannot use the services of Veterans Guardian to increase his disability benefits rating based on the physical symptoms that he experiences as a result of his PTSD.  He wants to work with Veterans Guardian again because the Company has already helped him to secure a disability benefit rating related to his PTSD.  L.D. 2259 makes that impossible.

109.     Because of L.D. 2259, the Veteran Plaintiffs are at risk of not obtaining the disability benefits to which they are entitled.

**L.D. 2259 UNLAWFULLY INFRINGES PLAINTIFFS' FIRST AMENDMENT RIGHTS**

**A.     Freedom of Speech**

110.     The First Amendment's Free Speech Clause prohibits laws that regulate protected speech based on its content unless they serve a compelling state interest and are narrowly tailored to advance that interest.

111.     L.D. 2259 is an unlawful content-based restriction because, without a compelling interest or narrow tailoring, it prohibits Veterans Guardian from receiving compensation for "advising, consulting or assisting an individual with, a veterans' benefits matter," and for "services rendered"—including "advi[ce], consult[ation], and assist[ance]"—"before the date on which a notice of disagreement, decision review or appeal is filed" "with respect to an individual's veterans' benefits matter."  37-B MRSA § 12.2.A-C.

112.     In these respects, L.D. 2259 exceeds the bounds of federal law, which limits its restrictions to those who act as "agent[s] or attorney[s]."  *See* 38 U.S.C. § 5901 ("[N]o individual may act *as an agent or attorney* in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such purposes by the Secretary." (emphasis added)); *id.* § 5904(c)(1) ("[A] fee may not be charged, allowed, or paid *for services of agents and attorneys* with respect to services provided before the date on which

a claimant is provided notice of the agency of original jurisdiction's initial decision . . . ." (emphasis added)); *see also, e.g.*, 38 C.F.R. § 14.636(c)(1)(i) ("*Agents and attorneys* may charge claimants or appellants for representation provided after an agency of original jurisdiction has issued notice of an initial decision on the claim . . . ." (emphasis added)).

113.   L.D. 2259 erases that limitation and in its place erects a comprehensive barrier that blocks anyone not expressly singled out by the VA for accreditation from accepting compensation for advising veterans on their claims.

114.   L.D. 2259 is thus directed at speech in the form of advice or assistance on a particular subject—namely, a "veterans' benefit matter[]."

115.   Such regulations that discriminate based on "subject matter" constitute content-based restrictions subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

116.   L.D. 2259 not only infringes Veterans Guardian's right to speak, it infringes the rights of SS Needham, Sgt. Dostie, SSG Wesbrock, and other veterans who wish to obtain professional assistance with their disability benefits claims.

117.   First, the law prevents SS Needham, Sgt. Dostie, and SSG Wesbrock from communicating with the persons of their choice in preparing their disability claims submission.

118.   Second, L.D. 2259 infringes the Veteran Plaintiffs' right to receive information from Veterans Guardian. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas.").

**B.   Freedom to Petition the Government and to Associate for the Purpose of Petitioning**

119.   "An individual's freedom to . . . petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were . . . also guaranteed." *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609, 622 (1984) (citation omitted).  "Infringements on that right may be justified [only] by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  *Id.* at 623 (citing cases).

120.    SS Needham, Sgt. Dostie, and SSG Wesbrock have a right to petition the VA for disability benefits.  L.D. 2259 burdens that right by precluding the Veteran Plaintiffs from working with Veterans Guardian and thus impeding their ability to effectively petition the VA regarding their benefits.

121.    The law also infringes their corresponding associational right. SS Needham, Sgt. Dostie, and SSG Wesbrock want to discuss, receive advice and instruction, analyze, strategize and otherwise engage with Veterans Guardian in service of their claims.  L.D. 2259 makes that impossible.

## C.    L.D. 2259 Fails Strict and Intermediate Scrutiny

122.    L.D. 2259's content-based restriction on speech and infringement on the Veteran Plaintiffs' petition and association rights is not narrowly tailored to serve a compelling government interest.

123.    Although apparently motivated to deter fraud and protect veterans, Maine cannot establish that the "'harms [underlying the law] are real, not merely conjectural . . . .'"  *Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 18 (1st Cir. 2007) (quoting *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 664 (1994)).

124.    Neither the public hearing held before the Joint Committee nor the subsequent work session to vote on the bill included any discussion of specific complaints of fraud against

unaccredited entities acting in the disability-benefits space.  No evidence whatsoever was offered to substantiate the vague allegations that were made.

125.   Even if Maine could adequately articulate or justify its interest in protecting veterans, it cannot show that less restrictive alternatives—such as the existing consumer-fraud protections or the types of guardrails proposed by opponents of L.D. 2259—are inadequate to address that interest.  *See Village of Schaumburg*, 444 U.S. at 637 ("Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly." (citations omitted)).

126.   Rather than carefully crafting its law to avoid burdening speech, Maine has broadly prohibited compensated "advi[ce], consult[ation], and assist[ance]" from all unaccredited entities and individuals, as well as any compensated services rendered before a notice of disagreement or appeal is filed, including speech-driven activities.  Responsible industry participants like Veterans Guardian are lumped together (and shut out of the industry) along with companies that might not be so scrupulous.  *See Village of Schaumburg*, 444 U.S. at 637 (noting that government may not "lump" good actors with bad "and refuse to employ more precise measures to separate one kind from the other").

127.   Even if subjected to intermediate scrutiny, L.D. 2259 fails because Maine cannot show that "the recited harms are real" and "the means [it has] chosen" to address them do not "burden substantially more speech than is necessary . . . ."  *Turner*, 512 U.S. at 662, 664 (internal quotation marks and citation omitted).

### D.   L.D. 2259 Is Unconstitutional Facially and As Applied to Plaintiffs

128.   Typically, a plaintiff making a facial challenge to a statute must establish "that no set of circumstances exists in which [the law] would be valid" or "that the statute lacks any plainly legitimate sweep."  *Stevens*, 559 U.S. at 472 (2010) (internal quotation marks and citation omitted).

"In the First Amendment context, however, [the Supreme Court has] recognize[d] a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (internal quotation marks and citation omitted).

129.    L.D. 2259 fails under both theories.   Because the State cannot show that L.D. 2259's complete prohibition on "advising, consulting and assisting" for compensation constitutes the least restrictive means of accomplishing its purported interest, the law fails strict scrutiny (and also fails intermediate scrutiny) and there is no set of circumstances in which the law could be constitutionally enforced.   For the same reason, the unconstitutional application of L.D. 2259's prohibition far outweighs any "legitimate sweep" the law might have.

130.    Even if the law's prohibitions could constitutionally be applied to some individuals and entities—like those that might be engaged in bad behavior—no such application would cover Veterans Guardian.   Veterans Guardian takes pains to be fully transparent with its clients so all have a clear understanding at the outset of the working relationship.   There is no deception, misdirection, fraud, or even surprises in the work Veterans Guardian performs for its clients.

131.    For that reason, L.D. 2259 is unconstitutional as applied to Veterans Guardian and the Veteran Plaintiffs insofar as they intend to work with Veterans Guardian to pursue their claims.

## CAUSES OF ACTION

### COUNT ONE
### L.D. 2259 VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION BY UNLAWFULLY RESTRICTING SPEECH BASED ON CONTENT (ALL PLAINTIFFS AGAINST DEFENDANT)

132.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 131 as if fully set forth herein.

133.    L.D. 2259 regulates speech based on content because it targets communications on a particular subject—a "veterans' benefit matter."

134.    Because Veterans Guardian's business activities depend on speech, L.D. 2259 infringes the Company's First Amendment rights.

135.    By restricting veterans from discussing their claims and obtaining advice or assistance from Veterans Guardian, L.D. 2259 also infringes on SS Needham, Sgt. Dostie, and SSG Wesbrock's right to speak, as well as their "right to receive information and ideas." *Stanley*, 394 U.S. at 564.

136.    L.D. 2259's content-based prohibition on speech is not narrowly tailored to serve a compelling government interest.

137.    Even if subject to intermediate scrutiny, L.D. 2259 fails because the State cannot establish that the recited harms are real and the means it has chosen to pursue its ends do not burden more speech than is necessary.

138.    In addition to constitutional injuries, L.D. 2259 devastates Veterans Guardian's business in Maine and impairs the Veteran Plaintiffs' ability to obtain the disability benefits to which they are entitled.

139.    If successful in their constitutional claims, Plaintiffs are entitled to recover their reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

**<u>COUNT TWO</u>**
**L.D. 2259 VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES**
**CONSTITUTION BY UNLAWFULLY RESTRICTING THE FREEDOM TO PETITION**
**THE GOVERNMENT FOR REDRESS AND THE CORRESPONDING FREEDOM OF**
**ASSOCIATION FOR THAT PURPOSE**
**(VETERAN PLAINTIFFS AGAINST DEFENDANT)**

140.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 139 as if fully set forth herein.

141.    The First Amendment protects the right to petition a government agency for redress of grievances and correspondingly protects the right to associate for that purpose.

142.    L.D. 2259 infringes on the Veteran Plaintiffs' right to petition the government by depriving them of their adviser of choice and likewise infringes their right to associate with their adviser of choice for purposes of petitioning the government.

143.    L.D. 2259 is not narrowly tailored to serve a compelling government interest.

144.    L.D. 2259 therefore violates the First Amendment rights of SS Needham, Sgt. Dostie, and SSG Wesbrock.

145.    In addition to constitutional injuries, L.D. 2259 impairs the Veteran Plaintiffs' ability to obtain the disability benefits to which they are entitled.

146.    If successful in their constitutional claims, Plaintiffs are entitled to recover their reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

i.    Declare that L.D. 2259 violates Plaintiffs' First Amendment rights to speak;

ii.   Declare that L.D. 2259 violates the Veteran Plaintiffs' right to petition the government;

iii.  Declare that L.D. 2259 violates the Veteran Plaintiffs' right to associate for the purposes of petitioning the government for redress;

iv.   Permanently enjoin Defendant, and his employees, agents, and successors in office, from enforcing L.D. 2259;

v.    Award Plaintiffs their costs and expenses, including reasonable attorneys' fees; and

vi.   Grant such other relief as the Court deems just and proper.

Dated:  8/9/2024                              Respectfully submitted,

*/s/Paul McDonald* _____          */s/ Mark Herring* _____
Paul McDonald                                Mark Herring*
Bernstein, Shur, Sawyer & Nelson P.A.        Anthony T. Pierce*
100 Middle Street                            James Tysse*
Portland, ME 04101                           Caroline Wolverton*
Tel.: 207-774-1200                           Akin Gump Strauss Hauer & Feld LLP
Email: pmcdonald@bernsteinshur.com           Robert S. Strauss Tower
                                             2001 K Street N.W.
*Attorney for the Plaintiffs*                Washington, DC 20006
                                             Tel.: 202-887-4000
                                             Email: mherring@akingump.com
                                                     apierce@akingump.com
                                                     jtysse@akingump.com
                                                     cwolverton@akingump.com


                                             *Attorneys for the Plaintiffs*

                                             *motions to appear pro hac vice pending*